UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS REGINALD BAKER,

    Plaintiff,

v.                              CASE NO. 8:12-CV-1038-T-24MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This is an action for review of the administrative denial of disability insurance benefits (DIB), period of disability benefits, and supplemental security income (SSI). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff contends that the Administrative Law Judge (ALJ) failed to (1) properly evaluate the side effects of his medication, (2) consider two treating physicians' opinions, and (3) consider the combined effect of his impairments. After considering the parties' briefs and the administrative record in this case, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

    *A.*    *Background*

    Claimant Dennis Reginald Baker was born on February 28, 1957. (R. 47) He completed high school and has past work experience as a truck driver, taxi driver, and derrick operator. (R 32-33) Claimant alleged disability commencing January 15, 2007. After a hearing, the ALJ found Claimant had the severe impairments of "alcohol dependence in remission, bipolar disorder, degenerative disc

disease, osteoarthritis of the bilateral knees and right shoulder, neuropathy, polysubstance dependence in remission, and schizoaffective disorder." (R 25) Aided by the testimony of a vocational expert, the ALJ determined the Claimant was not disabled as he had the residual functional capacity (RFC) to perform light, unskilled work with the following restrictions: he can never "climb ladders, ropes or scaffolds and can only frequently climb ramps or stairs. The claimant can frequently balance, kneel, and crouch but only occasionally stoop and crawl. Reaching in all directions including overhead is limited to frequent on the right side. Handling, fingering and feeling are limited to frequent on the right side. As for the left side, feeling is limited to frequent." (R. 28) The ALJ also found that, with this RFC, the Claimant could perform the jobs of customer security clerk, cleaner housekeeping, and photo copy machine operator, all jobs that exist in significant numbers in the national economy. (R 34) The Appeals Council denied review. Plaintiff, who has exhausted his administrative remedies, filed this action.

      B.     *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a

"sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has

3

been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    *Discussion*

Plaintiff argues the ALJ erred in three ways: (1) he failed to properly evaluate the side effects of Plaintiff's medication, (2) the ALJ did not consider two treating physicians' opinions, and (3) he failed to consider the combined effect of Plaintiff's impairments. I discuss each of these arguments below and conclude that the ALJ's decision is supported by substantial evidence.

    1.    *Side effects of Plaintiff's medication*

Plaintiff complains about the ALJ's consideration of the side effects of his medication; specifically, Plaintiff contends the ALJ should have considered his impaired short term memory and drowsiness. Plaintiff identifies the following evidence as showing that he suffers from these side effects: (1) his hearing testimony;[1] (2) treatment records from The Suncoast Center for Community Mental Health, Inc., which note Plaintiff's statements to his treatment providers that he experienced side effects; and (3) the warning information for his medication, which he obtained from the website for the National Library of Medicine and attached to his brief. Given this evidence, Plaintiff argues it was error for the ALJ to disregard his side effects of drowsiness and memory loss. The Commissioner responds that the ALJ did not err because Plaintiff did not complain of these specific side effects in his medical records, and his complaints are contradicted by the medical records and his daily activities.

An ALJ must consider side effects in the disability decision process. *See* SSR 96-7p; SSR 96-8p. For instance, side effects are considered in determining a claimant's RFC. *See* SSR 96-8p.

---

[1] Plaintiff testified that he has problems with his short-term memory, drowsiness, and "I've had problems just in balance, just all of a sudden los[ing] my balance and not be[ing] able to catch myself from falling." (R 56)

They are also considered in evaluating an individual's credibility about symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv); SSR 96-7p.  Given these requirements, side effects from medication "could render a claimant disabled or at least contribute to a disability." *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981) (citation omitted).  "However, courts have determined that substantial evidence supports an ALJ's decision not to consider side effects when the medical record does not contain any complaints or concerns about side effects." *Bailey v. Astrue*, 739 F. Supp. 2d 1365, 1379 (N.D. Ga. 2010) (*citing Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990)).

     First, Plaintiff does not directly challenge the ALJ's credibility or RFC determinations, or even mention them.  Plaintiff contends instead simply that the ALJ did not properly consider his medication side effects.  Plaintiff overlooks that the ALJ expressly considered Plaintiff's allegations of "imbalance, drowsiness, confusion, and difficulties with short term memory" and, consequently, limited Plaintiff's RFC to simple, routine, and repetitive tasks.[2] (R. 29, 32) The ALJ also concluded that Plaintiff's testimony of his side effects was not entirely credible to the extent it was inconsistent with Plaintiff's RFC. (R. 29)  The ALJ credited consultative examiner Dr. Hodan's statement in March 2009 that Plaintiff did not appear to have any severe impairments in concentration or memory and that he reported being depressed and suicidal only when his medications were taken away. (R. 32, 1134-36) The ALJ also emphasized that Plaintiff could remember his medications, including dosages, and did not need help getting to doctors' appointments and AA meetings. (R. 26, 32)

     Second, although Plaintiff alleges that Suncoast Center's treatment records "show concerns about side effects," they actually indicate that in May and July of 2007, Plaintiff complained of dry

---

[2] Plaintiff does not appear to challenge the ALJ's decision to disregard Plaintiff's complaints of imbalance as a side effect.

mouth and other unspecified side effects as a result of taking Wellbutrin and Cymbalta but do not note complaints of memory loss or drowsiness. After reviewing these records, the ALJ concluded that Plaintiff's "recent and remote memory were also reportedly intact." (R. 30) Darlene McLaughlin, a nurse practitioner who treated Plaintiff at Suncoast Center, relayed Plaintiff's complaints of "some side effects from the Wellbutrin" but that Plaintiff "appears to be doing well overall." (R 702) In September 2007, Ms. McLaughlin reported Plaintiff's comment that "he continues to do fairly well on his current medication regime" (R 697) and, in November 2007, that Plaintiff was continuing with "Cymbalta and Wellbutrin with positive results." (R 695) Plaintiff's treatment plan worksheets from Suncoast Center for the same time period (which he completed) indicate a similar trend: In August and September 2007, he reported having trouble with his medication, but by November 2007, after changing his dosage, he reported no problems with his medication. Then, in December 2007, Plaintiff began a 10-month jail sentence for a drug conviction. During this time he reported "hallucinations, paranoia, delusional thoughts, mood swings, depression, and sadness," symptoms Ms. McLaughlin attributed "most likely . . . to withdrawal from medication." (R. 666-67) Once released from jail, Plaintiff began treatment at Suncoast Center again and Ms. McLaughlin placed him back on his medications because they had stabilized him before. (R. 666-68)

Third, Plaintiff did not specifically complain of the side effects of drowsiness and memory in his other medical records.[3] Although he takes certain medications which may cause the side effects of drowsiness and memory loss, this fact does not require me to conclude that Plaintiff, in

---

[3] Plaintiff complained of memory loss during the period he was off his medication as a result of his jail stay. (R. 1071)

fact, suffers from these side effects. The information Plaintiff attached to his brief about the potential side effects of his prescribed medication does not persuade me otherwise. Accordingly, the ALJ's consideration of Plaintiff's side effects is supported by substantial evidence.

### 2. *Treating physicians*

Plaintiff's next argument is that the ALJ erred by failing to mention the opinions of Drs. Harris and Jackson. Indeed, the ALJ's decision does not mention Dr. Harris's July 2006 evaluation of Plaintiff, performed in connection with Plaintiff's involuntary commitment to a Greenville, South Carolina hospital for mental illness due to suicidal thoughts. The ALJ also does not mention the opinions of Dr. Jackson, the physician who signed off on Ms. McLaughlin's treatment records.

A court must give a treating physician's testimony substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted). An ALJ may reject the opinion of any physician when the evidence, as a whole, supports a contrary conclusion. *Bloodsworth*, 703 F.2d at 1240.

The ALJ's failure to mention Dr. Harris's treatment note is harmless error. First, Dr. Harris treated Plaintiff only once, six months prior to his disability onset date. He opined that Plaintiff is suffering from paranoia that may be independent of his cocaine use. (R. 516) A one-time examiner is not considered a treating source and his opinion is not entitled to great weight. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (holding a one-time examiner is not considered a treating

physician; therefore, his or her opinions are not entitled to deference). Thus, any error by the ALJ in not mentioning the report would be harmless. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (holding the ALJ failure to consider a consultative physician's medial report was harmless error because it would not have changed the result of the case); *see also Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error is harmless when it does not impact the determination of disability).

Second, Plaintiff must prove his disability existed during the time he was insured within the meaning of the special status requirements under the Act. *Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir. 1979).[4] Dr. Harris's treatment note does not relate to the time period between Plaintiff's alleged onset date (January 15, 2007) and his date of last insured (September 30, 2007). As this is a bright line, however, the ALJ should consider the totality of the evidence to the extent it "bears upon the severity of the claimant's condition before the expiration of his or her insured status." *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *4 (M.D. Fla. May 8, 2008). I find that the ALJ considered the totality of the evidence. For example, Dr. Harris's treatment note did not indicate whether Plaintiff's mental impairments are controlled by medication, which is something Ms. McLaughlin (who treated him for a longer period of time) found to be the case. This is confirmed by Plaintiff's statements, post-release, that he experienced "hallucinations, paranoia, delusional thoughts, mood swings, depression, and sadness," because in jail "they took him off all psych meds." (R. 666)

Third, Dr. Harris did not provide any insight into Plaintiff's limitations as a result of his

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

alleged paranoia. And, interestingly, in a psychiatric impairment questionnaire that the ALJ rejected as "so extreme, it is hardly plausible," even Ms. McLaughlin did not find Plaintiff suffered from paranoia.[5] (R. 30, 1173) Therefore, I find that remand is not necessary since further consideration of Dr. Harris's records would not reasonably alter the ALJ's findings. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988), *citing Gulf States Util. Co. v. Ecodyne Corp.*, 635 F.2d 517, 520 (5th Cir. Jan. 1981) (policy behind harmless error is to preserve judgment and avoid waste of time and remand not necessary where would produce same result while wasting time and resources).

Plaintiff also finds fault in the ALJ's omission of Dr. Jackson's opinions. This argument is a red herring. Dr. Jackson signed off on Ms. McLaughlin's treatment notes, which (as noted above) the ALJ considered. Dr. Jackson offered no other substantive opinions. The ALJ assigned little weight to Ms. McLaughlin's ultimate conclusion as to Plaintiff's functional limitations, but not because she is a nurse practitioner, as Plaintiff suggests. Rather, the ALJ considered Ms. McLaughlin's questionnaire as a treating source opinion and properly rejected it as inconsistent with her own treatment notes and Plaintiff's daily activities. Although Plaintiff does not argue otherwise, the ALJ considered Ms. McLaughlin's opinions as those of a treating source and his rejection of them is supported by good cause. That the ALJ omitted mention of Dr. Jackson is irrelevant because the ALJ considered Ms. McLaughlin's underlying opinions at length.

### 3. *Combined impairments*

Plaintiff also contends that the ALJ failed to consider the combined effect of his impairments. Specifically, the ALJ allegedly erred by failing to consider that Plaintiff's "pain makes his depression

---

[5] The ALJ ultimately assigned little weight to Ms. McLaughlin's conclusion that Plaintiff suffers from extreme functional limitations because the questionnaire was inconsistent with Ms. McLaughlin's other treatment notes and Plaintiff's daily activities. (R. 26-27, 32)

worse and his depression makes his pain feel more painful." (Doc. 18 at 9) The regulations demand the ALJ consider not just the disabling effect of each of impairment but also the combined effect of all the impairments. *See* 20 C.F.R. § 404.1523; *Davis v. Halala,* 985 F.2d 528, 534 (11th Cir. 1993) (ALJ is to evaluate the "whole person"). Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. *See Jones v. Dep't of Health and Human Servs.,* 941 F.2d 1529, 1533 (11th Cir. 1991).

Plaintiff maintains the ALJ did not meet this requirement. This Court does not agree. The ALJ sufficiently considered both Plaintiff's exertional and nonexertional limitations in determining whether he had the RFC to work. (R. 28) The ALJ stated: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . ." (*Id.*) The ALJ then found Plaintiff to be less than credible and discussed claimant's alleged physical and mental limitations in turn, including his limited ability to walk, stand, and lift, his limitations on attention, concentration, and memory, and the side effects of his medications. The ALJ's consideration of the evidence sufficiently supports the ALJ's findings that the Plaintiff possessed the RFC to perform light, unskilled work, despite his severe mental and physical limitations.

D. *Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED and judgment be entered in favor of the Commissioner.

IT IS SO REPORTED in Tampa, Florida on August 5, 2013.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).